# EXHIBIT 1

**In the Superior Court of the State of Arizona in and for the County of** Maricopa

# CV2018-011944

(Please Type or Print)

Plaintiff's Attorney  Christopher A. LaVoy

Attorney Bar Number  016609

BY CHRIS DEROSE, CLERK
M. Valenzuela DEP
ADAM VALENZUELA, FILED
18 SEP -6  PM 4:31

Is Interpreter Needed?  ☐ Yes ☒ No
If yes, what language?

| Plaintiff's Name(s):  (List all) | Plaintiff's Address: | Phone #: | Email Address: |
|---|---|---|---|
| Tapestry on Central Condominium Association | c/o Christopher A. LaVoy | 602-255-6000 | cal@tblaw.com |
| | 2525 E. Camelback Rd., 7th Fl. | | |
| | Phoenix, AZ 85016 | | |

(List additional Plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s):  (List All)
Liberty Insurance Underwriters Inc.

(List additional Defendants on page two and/or attach a separate sheet)

## NATURE OF ACTION

(Place an **"X"** next to the **one** case category that most accurately describes your primary case.)

**100 TORT MOTOR VEHICLE:**

☐ 101 Non-Death/Personal Injury
☐ 102 Property Damage
☐ 103 Wrongful Death

**110 TORT NON-MOTOR VEHICLE:**

☐ 111 Negligence
☐ 112 Product Liability – Asbestos
☐ 112 Product Liability – Tobacco
☐ 112 Product Liability – Toxic/Other
☐ 113 Intentional Tort

☐ 114 Property Damage
☐ 115 Legal Malpractice
☐ 115 Malpractice – Other professional
☐ 117 Premises Liability
☐ 118 Slander/Libel/Defamation
☐ 116 Other (Specify) _____

**120 MEDICAL MALPRACTICE:**

☐ 121 Physician M.D.   ☐ 123 Hospital
☐ 122 Physician D.O    ☐ 124 Other

**130 CONTRACTS:**

☐ 131 Account (Open or Stated)
☐ 132 Promissory Note
☐ 133 Foreclosure
☐ 138 Buyer-Plaintiff
☐ 139 Fraud
☒ 134 Other Contract (i.e. Breach of Contract)
☐ 135 Excess Proceeds-Sale
☐ Construction Defects (Residential/Commercial)
☐ 136 Six to Nineteen Structures
☐ 137 Twenty or More Structures

**150-199 OTHER CIVIL CASE TYPES:**

☐ 156 Eminent Domain/Condemnation
☐ 151 Eviction Actions (Forcible and Special Detainers)
☐ 152 Change of Name
☐ 153 Transcript of Judgment
☐ 154 Foreign Judgment
☐ 158 Quiet Title
☐ 160 Forfeiture
☐ 175 Election Challenge
☐ 179 NCC-Employer Sanction Action
(A.R.S. §23-212)

©Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

CV10f – 070118

Case No._____

☐ 180 Injunction against Workplace Harassment
☐ 181 Injunction against Harassment
☐ 182 Civil Penalty
☐ 186 Water Rights (Not General Stream Adjudication)
☐ 187 Real Property
☐ Special Action against Lower Courts
　　(See Lower Court Appeal cover sheet in Maricopa)
☐ 194 Immigration Enforcement Challenge
　　(A.R.S. §§1-501, 1-502, 11-1051)

### 150-199 UNCLASSIFIED CIVIL:

☐ Administrative Review
　　(See Lower Court Appeal cover sheet in Maricopa)
☐ 150 Tax Appeal
　　(All other tax matters must be filed in the AZ Tax
　　Court)
☐ 155 Declaratory Judgment
☐ 157 Habeas Corpus
☐ 184 Landlord Tenant Dispute- Other
☐ 190 Declaration of Factual Innocence
　　(A.R.S. §12-771)

☐ 191 Declaration of Factual Improper Party Status
☐ 193 Vulnerable Adult (A.R.S. §46-451)
☐ 165 Tribal Judgment
☐ 167 Structured Settlement (A.R.S. §12-2901)
☐ 169 Attorney Conservatorships (State Bar)
☐ 170 Unauthorized Practice of Law (State Bar)
☐ 171 Out-of-State Deposition for Foreign Jurisdiction
☐ 172 Secure Attendance of Prisoner
☐ 173 Assurance of Discontinuance
☐ 174 In-State Deposition for Foreign Jurisdiction
☐ 176 Eminent Domain– Light Rail Only
☐ 177 Interpleader– Automobile Only
☐ 178 Delayed Birth Certificate (A.R.S. §36-333.03)
☐ 183 Employment Dispute- Discrimination
☐ 185 Employment Dispute-Other
☐ 196 Verified Rule 45.2 Petition
☐ 195(a) Amendment of Marriage License
☐ 195(b) Amendment of Birth Certificate
☐ 163 Other _____
　　　　　　　　(Specify)

### RULE 26.2 DISCOVERY TIER or AMOUNT PLEADED:
(State the amount in controversy pleaded or place an "X" next to the discovery tier to which the pleadings allege the case would belong under Rule 26.2.)

☐ Amount Pleaded $ _____　　☐ Tier 1　　☒ Tier 2　　☐ Tier 3

### EMERGENCY ORDER SOUGHT

☐ Temporary Restraining Order　　☐ Provisional Remedy　　☐ OSC　　☐ Election Challenge
☐ Employer Sanction　　☐ Other (Specify) _____

### COMMERCIAL COURT (Maricopa County Only)

☐ This case is eligible for the Commercial Court under Rule 8.1, and Plaintiff requests assignment of this case to the commercial Court. More information on the commercial Court, including the most recent forms, are available on the Court's website at https://www.superiorcourt.maricopa.gov/commercial-court/.

**Additional Plaintiff(s):**

_____

_____

**Additional Defendant(s):**

_____

_____

CHRIS DEROSE
Clerk of the Superior Court
By Anna Valenzuela, Deputy
Date 09/06/2018 Time 16:33:00
Description                  Amount
-------- CASE# CV2018-011944 --------
CIVIL NEW COMPLAINT           333.00
-------------------------------------
TOTAL AMOUNT                  333.00
        Receipt# 26789938

Christopher A. LaVoy (016609)

**TB** **TIFFANY & BOSCO**
P.A.

SEVENTH FLOOR CAMELBACK ESPLANADE II
2525 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016B4237
TELEPHONE: (602) 255-6000
FACSIMILE:  (602) 255-0103
E-MAIL: cal@tblaw.com

*Attorneys for plaintiff*

# SUPERIOR COURT OF ARIZONA

## MARICOPA COUNTY

Tapestry on Central Condominium Association,

                    Plaintiff,

v.

Liberty Insurance Underwriters Inc.,

                    Defendant.

Case No.:  CV2018-011944

**COMPLAINT**

For its complaint, plaintiff alleges as follows:

### THE PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Tapestry on Central Condominium Association ("Association"), an Arizona non-profit corporation, is the condominium association for "Tapestry on Central," an upscale three-building, seven-floor, 292-unit condominium complex in downtown Phoenix, Arizona. The complex is a mixed-use development with both residential and commercial units. The Association was incorporated on January 29, 2001 pursuant to the Declaration of Condominium and of Covenants, Conditions and Restrictions for Willowalk Condominium.

2.      Defendant Liberty Insurance Underwriters Inc. ("Liberty") is an Illinois-domiciled insurance company authorized to issue policies in Arizona.

3.     This Court has subject matter jurisdiction because the amount demanded exceeds $1,000. *See* Ariz. Const., art. 6 § 14.

4.     The damages sought are such as to qualify for Tier 2 as defined by Ariz. R. Civ. P. 26.2(c)(3).

5.     Venue is proper in Maricopa County because the events underlying this suit occurred within the county. *See* A.R.S. § 12-401(7).

### FACTUAL BACKGROUND

6.     Liberty issued Community Association Executive Advantage Policy, Policy No. CAP010206-0212 (the "2013/2014 Policy") to the Association. The 2013/2014 Policy had a one-year term from October 26, 2013 through October 26, 2014.

7.     A true and correct copy of the 2013/2014 Policy is attached as Exhibit 1.

8.     On March 18, 2014, while the 2013/2014 Policy was in effect, Matthew B. Hodeaux Architect, PLLC ("Hodeaux") and MBH Development, LLC ("MBH") sued the Association in the Superior Court of Arizona, Maricopa County, Case No. CV2014-004795.

9.     A true and correct copy of the complaint is attached as Exhibit 2.

10.     Hodeaux was the Association's former architect who sued the Association for unpaid professional fees.

11.     Hodeaux's company, MBH, sued the Association for unpaid construction services and materials.

12.     The Association tendered the complaint to Liberty for defense under the 2013/2014 Policy.

13.     By letter dated September 17, 2014 (*see* Exhibit 3), Liberty denied coverage for the Hodeaux/MBH claim.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

14.     Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

15.     Liberty had a duty under the 2013/2014 Policy to defend the Association in the Hodeaux/MBH action.

16.     The 2013/2014 Policy expressly covers the defense of breach of contract claims in Section 5.2 of the 2013/2014 Policy.

17.     The construction-defects exclusion in Section 4.11 does not apply because there was no causal nexus between the Hodeaux/MBH claims and the underlying construction defects. Hodeaux was hired to provide architectural consulting services in connection with construction defects. MBH was hired to perform repair work. There is no causal link between the construction defects and the Hodeaux/MBH claims. Hodeaux/MBH did not sue *because of* the construction defects, but because their fees were not paid. The direct and immediate cause was the non-payment of fees.

18.     The builder/developer exclusion in Section 4.11 does not apply because the Association was not acting in the capacity of a builder or developer.

19.     Liberty breached the 2013/2014 Policy by not defending the Association in the Hodeaux/MBH Action.

20.     The Association suffered damages from Liberty's breach of the duty to defend.

21.     This claim arises out of contract pursuant to A.R.S. § 12-341.01 with the subject contract being the 2013/2014 Policy. The Association is entitled to an award of its reasonable attorneys' fees should it prevail on the claim.

WHEREFORE, the Association prays for judgment against Liberty as follows:

A.    For an award of compensatory, consequential, special, and all other damages and restitution needed to make the Association whole as a result of Liberty's breach of the 2013/2014 Policy;

B.    For an award of pre-judgment interest;

C.    For an award of the Association's costs and reasonable attorneys' fees;

D.    For an award of post-judgment interest; and

E.    For such other and further relief as needed to provide the Association with a complete remedy.

DATED this 6th day of September, 2018.

TIFFANY & BOSCO, P.A.

By: _____
        Christopher A. LaVoy
        Seventh Floor Camelback Esplanade II
        2525 East Camelback Road
        Phoenix, Arizona 85016
        *Attorneys for plaintiff*

# Exhibit 1

**LIBERTY INSURANCE UNDERWRITERS INC.**
55 Water Street, 18th Floor • New York, New York 10041
(a member of the Liberty Mutual Group and hereinafter "the Insurer")
Liberty Insurance Underwriters Inc.'s toll free number is: 800-677-9163

# COMMUNITY ASSOCIATION EXECUTIVE ADVANTAGE POLICY

### DECLARATIONS

NOTICE:  THIS IS A CLAIMS-MADE POLICY.  THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR DISCOVERY PERIOD, IF APPLICABLE, AND REPORTED TO THE INSURER AS SOON AS PRACTICABLE BUT IN NO EVENT LATER THAN 90 DAYS AFTER THE END OF THE POLICY PERIOD.  PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

UNLESS AMENDED BY ENDORSEMENT, AMOUNTS INCURRED AS DEFENSE COSTS SHALL BE IN ADDITION TO THE LIMIT OF LIABILITY AND SHALL NOT BE APPLIED AGAINST THE APPLICABLE RETENTION.

THE INSURER HAS THE DUTY TO DEFEND.

**POLICY NUMBER:** CAP010206-0212            **PRODUCER: Graham Insurance Group, Inc.**

**RENEWAL OF:**       CAP010206-0112

**ITEM I. NAME AND ADDRESS OF PARENT ORGANIZATION:**

Physical:                                              Mailing: c/o FirstService Residential California, LLC
Willowalk Condominium Association dba Tapestry on Cen        Willowalk Condominium Association dba Tapestry on Cen
17 W. Vernon                                          9000 East Pima Center Drive #300
Phoenix, AZ 85003                                     Scottsdale, AZ 85258

| | | |
|---|---|---|
| **ITEM II.** | **POLICY PERIOD:** | Inception Date: 10/26/13    Expiration Date: 10/26/2014 <br> (12:01 A.M. at the address set forth in Item I) |
| **ITEM III.** | **LIMIT OF LIABILITY:** | $1,000,000    in the aggregate for the **Policy Year** |
| **ITEM IV.** | **RETENTION:** | $5,000    in the aggregate each **Claim** |
| **ITEM V.** | **PRIOR LITIGATION DATE:** | 10/26/12    *Poliy & Appl.* |
| **ITEM VI.** | **PREMIUM:** | $2,331.00 |

*Policy Application*

**ITEM VII.       ENDORSEMENTS FORMING PART OF THIS POLICY AT ISSUANCE:**

AZ.CAPCNR.            ALLCAPDEFAMATION.        ALLCAPHAMMER.          ALLCAPINSDVSINSD.
ALLCAPREDOMESTICATIC ALLCAPTRIA.              URCAPARDE.

This Declarations page, together with the **Application**, the attached Community Association Policy Form, and all endorsements thereto, shall constitute the contract between the Insurer and the **Insureds**.  This Policy is valid only if signed below by a duly authorized representative of the Insurer.

_____
Authorized Representative
LIUI00DO030050207
81000

LIBERTY 000144

# LIBERTY INSURANCE UNDERWRITERS INC.

**(a member of the Liberty Mutual Group
and hereinafter called "the Insurer")**

**COMMUNITY ASSOCIATION EXECUTIVE ADVANTAGE POLICY**

(Words and phrases printed in **bold**, other than
in the headings, are defined in Section 23 below.)

In reliance upon the truthfulness and accuracy of the statements made in the **Application**, in consideration of, and subject to, the payment of premium when due, and subject to the terms, conditions, and exclusions of this Policy, the Insurer and the **Insureds** agree as follows:

**1. Insuring Agreement:** The Insurer shall pay on behalf of the **Insureds** all **Loss** which they shall become legally obligated to pay as a result of a **Claim** first made during the **Policy Period** or **Discovery Period**, if applicable, against the **Insureds** for a **Wrongful Act** which takes place before or during the **Policy Period**.

**2. Defense Costs and Settlements:**

   **2.1** It shall be the right and duty of the Insurer to defend any **Claim**.   The Insurer may investigate, as it deems appropriate, any **Claim**, circumstance, or **Wrongful Act** involving the **Insureds**.

   **2.2** The **Insureds** shall not incur any **Defense Costs**, admit any liability, assume any obligation, agree to any settlement, or make any settlement offer with respect to any **Claim** without the Insurer's prior written consent, which shall not be unreasonably withheld.   The Insurer shall not be liable for any **Defense Costs** incurred or any admissions, obligations, agreements, or settlements made by the **Insureds** without the Insurer's prior written consent.

   **2.3** The Insurer has the right to negotiate the settlement of any **Claims** it deems expedient, but only with the **Insured's** consent.   If the **Insureds** withhold consent to such settlement, the Insurer's liability for such **Claim** is limited to the amount in excess of the Retention which the Insurer would have contributed to the settlement had the **Insured** consented to the settlement, plus **Defense Costs** covered by the Policy incurred prior to the date of such refusal to settle.

**3. Cooperation:** As a condition precedent to the **Insureds'** rights under this Policy, they shall give to the Insurer all information and cooperation as the Insurer reasonably may require and shall do nothing that may prejudice the Insurer's position or its rights of recovery.

**4. Claim Exclusions:** This Policy does not apply to any **Claim** made against any **Insured** for:

   **4.1**

       **(a)**   bodily injury, sickness, disease, death; or

       **(b)**   emotional distress, mental anguish, false arrest or imprisonment, abuse of process, malicious prosecution, libel, slander, defamation, violation or invasion of any right of privacy or private occupancy, trespass, nuisance or wrongful entry or eviction; or

       **(c)**   damage to, destruction of, or loss of use of any tangible property;

LIUI00DO1200100207

LIBERTY 000145

provided, however, that part (b) of this exclusion shall not apply to any **Claim** brought by or on behalf of any **Third Person** or past, present or prospective **Insured Person** for an **Employment Practices Wrongful Act**;

4.2    for any error, misstatement, misleading statement, act, omission, neglect or breach of duty by **Insured Persons** of any **Subsidiary** in such capacity or by the **Subsidiary** itself if such error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly occurred, in whole or in part, when such entity was not a **Subsidiary**;

4.3    based upon, arising from, or in any way related to any error, misstatement, misleading statement, act, omission, neglect or breach of duty which has been reported or has been the subject of any notice under any insurance policy of which this Policy is a renewal or replacement or under any other policy which it may succeed in time;

4.4    for any actual or alleged violation of the Employee Retirement Income Security Act of 1974, amendments thereto or similar federal, state, local or common law;

4.5    based upon, arising from, or in any way related to:

    **(a)**    any demand, suit, or other proceeding against any **Insured** which has been made, which existed, or was pending prior to the applicable Prior Litigation Date set forth in Item V of the Declarations; or

    **(b)**    the same or substantially the same facts, circumstances or allegations involved in such demand, suit, or other proceeding;

4.6    brought or maintained by or on behalf of the **Insured Organization**;

4.7    based upon, arising from, or in any way related to the actual, alleged, or threatened discharge, dispersal, release or escape of **Pollutants, Fungi** or **Microbes**, or any direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify, or neutralize **Pollutants, Fungi** or **Microbes**;

4.8    based upon, arising from, or in any way related to an **Insured Person** serving as a director, officer, trustee, regent, governor, volunteer, employee, or similar position of any entity other than the **Insured Organization**; or

4.9    based upon, arising from, or in any way related to:

    **(a)**    any **Insureds** gaining in fact any personal profit, remuneration or advantage to which they were not legally entitled; or

    **(b)**    any deliberately dishonest, malicious or fraudulent act or omission or any willful violation of law by any **Insured**;

provided, however, this exclusion shall only apply if it is finally adjudicated that such conduct in fact occurred.

For purposes of determining the applicability of Section 4.9, the **Wrongful Act** of any **Insured Person** shall not be imputed to any other **Insured Person**.

LIBERTY 000146

**4.10**   based upon, arising from, or in any way related to any **Employment Practices Wrongful Act** alleged by or on behalf of an employee of the **Property Manager**.

**4.11**   based upon, arising from, or in any way related to any **Construction Defect**.

**4.12**   based upon, arising from, or in any way related to any actual or alleged liability of an **Insured**, in whole or in part, in the capacity as a builder or developer, or in the capacity of a sponsor of the **Organization**, or of an **Insured** affiliated with such a builder, developer or sponsor, and which is related to actual or alleged misconduct on the part of such builder, developer or sponsor, including but not limited to actual or alleged conflict of interest, self-dealing, or disputes concerning conversion, construction or development.

5.   **Loss Exclusions:** The Insurer shall not be liable to pay any **Loss** in connection with any **Claim**:

**5.1**   for any obligation of the **Insured Organization** to modify any building or property in order to affect compliance with the Americans With Disabilities Act and any amendments thereto or any similar federal, state or local statute, regulation, or common laws; or

**5.2**   for any actual or alleged liability of any **Insured** under any contract or agreement, express or implied, written or oral, except for employment related obligations which would have attached absent such contract or agreement;

Provided, however, that these exclusions shall not apply to the Insurer's duty to defend and to pay **Defense Costs**.

6.   **Application Representations and Severability**:

**6.1**   The **Insureds** represent that the statements and representations contained in the **Application** are true and shall be deemed material to the acceptance of the risk or the hazard assumed by the Insurer under this Policy. This Policy is issued in reliance upon the truth of such statements and representations.

**6.2**   The **Insureds** agree that if the **Application** contains any material statements or representations that are untrue, this Policy shall be void as to the **Insured Organization** and any **Insured Person** who knew the facts that were not truthfully disclosed, provided that such knowledge shall not be imputed to any other **Insured Person**.

7.   **Reporting Requirements:**

**7.1**   The **Insureds**, as a condition precedent to their rights under this Policy, shall report every **Claim** to the Insurer as soon as practicable from the date any **Executive Officer** has knowledge of the **Claim**, and in no event later than ninety (90) days after the end of the **Policy Period**.

**7.2**   Notice of any **Claim**, circumstance, or **Wrongful Act** shall be forwarded to **Liberty International Underwriters, 55 Water Street, 18th Floor, New York, NY 10041 Attention: Specialty Casualty Claims.**

**7.3**   All notices under this Policy shall be sent in writing by mail, prepaid express courier, or facsimile and shall be effective upon receipt thereof by the addressee.

8.   **Notice of Circumstance or Wrongful Act:** If during the **Policy Period** or the **Discovery Period** the **Insureds** become aware of any circumstance or **Wrongful Act** that reasonably may be

LIBERTY 000147

expected to give rise to a **Claim,** and if such circumstance or **Wrongful Act** is reported to the Insurer during the **Policy Period** in writing with details as to the nature and date of such circumstance or **Wrongful Act,** the identity of any potential claimant, the identity of any **Insured Person** involved in such circumstance or **Wrongful Act,** and the manner in which the **Insureds** first became aware of such circumstance or **Wrongful Act,** then any **Claim** subsequently arising from such circumstance or **Wrongful Act** shall be deemed under this Policy to be a **Claim** made during the **Policy Period** in which the circumstance or **Wrongful Act** was first duly reported to the Insurer.

9. **Limit of Liability:**

   9.1 The Insurer's maximum aggregate Limit of Liability for all **Loss** under this Policy shall be the amount set forth in Item III of the Declarations.  Amounts incurred as **Defense Costs** shall be in addition to the Limit of Liability.

   9.2 All **Claims** arising from the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed one **Claim** and subject to a single limit of liability.  Such **Claim** shall be deemed first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period.**

   9.3 With respect to all **Claims** deemed to have been made in a **Policy Year,** should the Limit of Liability be exhausted by payment of **Loss** resulting from one or more of such **Claims,** the Insurer's duty to defend shall cease and any and all obligations of the Insurer hereunder shall be deemed to be completely fulfilled and extinguished and the Insurer shall have no further obligations hereunder of any kind or nature.

10. **Retention:**  The Insurer shall be liable to pay only the amount of covered **Loss** in excess of the applicable Retention amount set forth in Item IV of the Declarations.  Such applicable Retention shall be uninsured, shall not be applicable to **Defense Costs** and shall be borne by the **Insured Organization.**

11. **Allocation:**  If a **Claim** gives rise to **Loss** covered under this Policy and loss not covered under this Policy, either because a **Claim** includes both covered and uncovered matters or both covered and uncovered parties, the **Insureds** and the Insurer shall allocate such amount between covered **Loss** and uncovered loss.

12. **Other Insurance:**  If any **Loss** arising from any **Claim** is insured by other valid and collectible insurance, then this Policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy or policies, whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy to this Policy's Policy Number.

13. **Discovery Period:**

    13.1 If the Insurer or the **Parent Organization** fails or refuses to renew this Policy or if the **Parent Organization** cancels this Policy, any **Insured** shall have the right to an extension of the coverage granted by this Policy following the effective date of such cancellation or non-renewal.  Such extension of coverage shall apply solely with respect to **Wrongful Acts** taking place before the effective date of such cancellation or non-renewal.

    13.2 If the Insurer refuses to renew this Policy the **Discovery Period** shall be the period of ninety (90) days from the end of the **Policy Period,** and there shall be no charge for this

LIBERTY 000148

Automatic Discovery Period of ninety (90) days. If prior to the end of the Automatic Discovery Period the Parent Organization pays the Insurer an additional amount equal to thirty-five percent (35%) of the annual premium of this Policy, the term of the Discovery Period shall be extended for an additional twelve (12) months from the end of the Automatic Discovery Period. Such Discovery Period Premium shall be deemed fully earned as of such date. This extension shall not apply if this Policy is terminated by the Insurer for failure to pay any premium when due.

**13.3** If the **Parent Organization** fails or refuses to renew or cancels this Policy, the **Parent Organization** may purchase a **Discovery Period** of twelve (12) month from the end of the **Policy Period**, provided that the **Parent Organization** pays the Insurer an additional amount equal to thirty-five percent (35%) of the annual premium of this Policy within thirty (30) days of the end of the **Policy Period**. Such Discovery Period Premium shall be deemed fully earned as of such date.

**13.4** The extension of coverage for the **Discovery Period** shall not in any way increase the Limit of Liability set forth in Item III of the Declarations. For purposes of the Limit of Liability, the **Discovery Period** is considered to be part of and not in addition to the last **Policy Year**.

**14. Conversion to Automatic Run-off:**

**14.1** In the event of a **Change in Control** during the **Policy Period**, coverage under this Policy shall continue until the end of the **Policy Period**, but only with respect to **Claims** for **Wrongful Acts** taking place prior to the effective date of such **Change in Control**. The entire premium for this Policy shall be deemed fully earned as of the effective date of such **Change in Control**.

**14.2** The **Parent Organization** shall give written notice of such **Change in Control** to the Insurer as soon as practicable, together with such information as the Insurer may reasonably require.

**15. Subrogation**: If the Insurer pays any **Loss** under this Policy, the Insurer shall be subrogated to the extent of such payment to all rights of recovery thereof. The **Insureds** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the **Insureds**. The obligations of the **Insureds** pursuant to this Section 15 survive the termination of the **Policy Period**.

**16. Parent Organization as Authorized Representative**: The **Insureds** agree that the **Parent Organization** shall act on their behalf with respect to all matters under this Policy, including without limitation the giving and receiving of notices hereunder, the payment or return of premiums, and the negotiation and acceptance of endorsements.

**17. Amendment, Assignment and Headings:**

**17.1** Any amendment to this Policy or assignment of an interest in this Policy, in whole or in part, shall be effective only if made by endorsement to this Policy signed by an authorized representative of the Insurer.

**17.2** The headings to the provisions in this Policy, including those found in any endorsements attached hereto, are provided for convenience only and do not affect the construction hereof.

LIBERTY 000149

18. **Territory**:  This Policy applies to **Wrongful Acts** occurring anywhere in the world, provided that a **Claim** is brought against the **Insured** within the United States of America, its territories or possessions or Canada.

19. **Spousal Benefit**:  If a **Claim** against an **Insured Person** for a **Wrongful Act** otherwise covered under this Policy includes a claim against his/her legal spouse where the claimant asserts such claim by reason of spousal status or seeks to obtain recovery against property in which such spouse has an interest, the amount which such spouse becomes legally obligated to pay in respect of such **Claim** (including defense costs) shall be deemed the **Loss** and **Defense Costs** of such **Insured Person**, and subject to this Policy's terms, conditions, and exclusions.  In any event, this extension shall not cover any conduct or wrongful act committed by such legal spouse.

20. **Estates and Legal Representatives**:  In the event of the death, incapacity, or bankruptcy of an **Insured Person**, any **Claim** made against the estate, legal representatives, heirs, or the assigns of such **Insured Person** for a **Wrongful Act** by such **Insured Person** shall be deemed to be a **Claim** against such **Insured Person**.

21. **Termination**:

   21.1  The Insurer may not cancel this Policy except for non-payment of premium when due.  Such cancellation shall be effective as of the inception date of the **Policy Period**.

   21.2  The **Parent Organization** may cancel this Policy by sending notice of cancellation to the Insurer.  Such cancellation shall be effective on the date the Insurer receives such notice. The **Parent Organization** may not cancel this Policy in anticipation of or after the effective date of a **Change in Control**.  In the event the **Parent Organization** cancels this Policy, the Insurer shall retain the customary short rate premium.  Payment of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

   21.3  If the Insurer elects not to renew this Policy, the Insurer shall provide the **Parent Organization** with not less than sixty (60) days advance notice thereof.

22. **Action Against Insurer**:

   22.1  No action shall be taken against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, or the amount of the **Insureds'** obligation to pay shall have been finally determined either by judgment against the **Insureds** after actual trial, or by written agreement of the **Insureds**, the claimant and the Insurer.

   22.2  No person or organization shall have the right under this Policy to join the Insurer as a party to any action against the **Insureds**, nor shall the Insurer be impleaded by the **Insureds** or their legal representatives.

23. **Definitions**:

   23.1  "**Application**" means all signed applications, including attachments and materials submitted therewith or as a part thereof, or incorporated therein, for this Policy and for any policy in an uninterrupted series of policies issued by the Insurer of which this Policy is a direct or indirect renewal or replacement.  All such applications, attachments, and materials are deemed attached to and incorporated into this Policy.

LIUI00DO1200100207                    6 of 11

LIBERTY 000150

**23.2** **"Change in Control"** means:

    **(c)** the acquisition by another entity of voting rights resulting in voting control by such other entity of more than 50% of the outstanding voting rights representing the present right to vote for election of directors or equivalent positions of the **Parent Organization;**

    **(d)** the merger of the **Parent Organization** into another entity such that the **Parent Organization** is not the surviving entity, or the consolidation of the **Parent Organization** with another entity; or

    **(e)** the loss of the **Parent Organization's** not-for-profit tax status.

**23.3** **"Claim"** means:

    **(a)** a written demand for monetary or non-monetary relief against an **Insured;**

    **(b)** the commencement of a civil or criminal judicial proceeding or arbitration against an **Insured;**

    **(c)** the commencement of a formal criminal, administrative or regulatory proceeding or investigation against an **Insured,** including any brought before the Equal Employment Opportunity Commission or any similar state, local or territorial governmental agency ; or

including any appeal therefrom.  A **Claim** will be deemed first made on the date an **Insured** receives a written demand, complaint, indictment, notice of charges, or order of formal investigation.

**23.4** **"Defense Costs"** means reasonable and necessary fees (including attorneys' fees and experts' fees) and expenses incurred in the defense of a **Claim** and cost of attachment or similar bonds, but shall not include the wages, salaries, benefits or expenses of any directors, officers or employees of the **Insured Organization.**

**23.5** **"Discovery Period"** means the period of time set forth in Section 13.

**23.6** **"Employment Practices Wrongful Act"** means:

    **(a)** wrongful dismissal or discharge or termination of employment, whether actual or constructive;

    **(b)** discrimination, whether based upon race, sex, age, national origin, religion, sexual orientation or disability;

    **(c)** sexual or other harassment in the workplace;

    **(d)** employment related misrepresentation;

    **(e)** violation of employment laws;

    **(f)** wrongful failure to employ, promote or grant tenure;

LIBERTY 000151

(g)    wrongful discipline;

(h)    negligent evaluation;

(i)    retaliation; and/or

(j)    failure to provide adequate workplace or employment policies or procedures.

Solely with respect to any **Claim** brought by or on behalf of any **Third Party, Employment Practices Wrongful Act** means any actual or alleged, discrimination, sexual harassment or violation of such **Third Party's** civil rights in relation to such discrimination or sexual harassment, whether direct, indirect, or unintentional, committed by an **Insured Person** in his/her capacity as an **Insured Person** or by the **Insured Organization**.

23.7    **"Executive Officer"** means the president, chief executive officer, chief operating officer, chief financial officer, managing director, any executive vice president and any equivalent executive position of the **Insured Organization**.

23.8    **"Fungi"** means any form of fungus, including but not limited to yeast, mold, mildew, rust, smut or mushroom, and any spores, mycotoxins, odors or any other substances, products, or by products produced by, released by, or arising out of the current or past presence of fungi.

23.9    **"Insolvency"** means the status of the **Insured Organization** as a result of the appointment of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage, or liquidate the **Insured Organization**, or the **Insured Organization** becoming an insolvent debtor-in-possession.

23.10    **"Insured(s)"** means the **Insured Persons** and the **Insured Organization**.  Insured(s) also means any **Property Manager**, but only if the **Property Manager** is acting pursuant to the written authority granted by the **Parent Organization** or on behalf of and at the direction of the **Parent Organization** or any **Subsidiary**.

23.11    **"Insured Organization"** means any entity named in Item I of the Declarations and any **Subsidiary**, including any such entity operating as a debtor-in-possession.

23.12    **"Insured Person(s)"** means one or more natural persons who were, now are, or shall hereafter be duly elected or appointed directors, trustees, officers, employees, committee members or volunteers of the **Insured Organization**, or, with respect to a **Subsidiary** operating outside the United States, their functional equivalent, regardless of title.  It also means one or more natural persons who were, now are, or shall hereafter be duly elected or appointed directors, trustees, officers, employees, committee members or volunteers of any **Property Manager**, but only if such persons are acting within the scope of their employment with the **Property Manager** and on behalf of the **Parent Organization** or any **Subsidiary**.

23.13    **"Interrelated Wrongful Acts"** means **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions, or causes.

LIBERTY 000152

**23.14** **"Loss"** means:

    **(a)**    sums which the **Insureds** are legally obligated to pay solely as a result of any **Claim** insured by this Policy, including damages, judgments, settlement amounts, legal fees and costs awarded pursuant to judgments, punitive or exemplary damages, and the multiple portion of any multiplied damage award; and

    **(b)**    any excise tax equal to ten percent (10%) of an excess benefit which has been assessed by the Internal Revenue Service against any **Insured Person** pursuant to Section 4658 of the Internal Revenue Code for participation of an organization manager in an excess benefit transaction.

**Loss** shall not include any other taxes, fines, penalties, or matters uninsurable pursuant to any applicable law.

**23.15** **"Microbes"** means any non-fungal microorganisms or non-fungal colony-form organisms that causes infection or disease including but not limited to any spores, mycotoxins, odors or any other substances, products, or by products produced by, released by, or arising out of the current or past presence of microbes.

**23.16** **"Parent Organization"** means the **Insured Organization** first named in Item I of the Declarations.

**23.17** **"Policy Period"** means the period from the inception date set forth in Item II of the Declarations to the expiration date set forth in Item II of the Declarations, or its earlier termination pursuant to Section 21.

**23.18** **"Policy Year"** means the period of one year following the effective date and hour of this Policy or the period of one year following any anniversary date thereof falling within the **Policy Period**; or if the time between the effective date or any anniversary date and the termination of this Policy is less than one year, such lesser period.

**23.19** **"Pollutants"** means any substance exhibiting hazardous characteristics as is or may be identified on any list of hazardous substances issued by the United States Environmental Protection Agency, or any state, local, or foreign counterpart.  This definition shall include, without limitation, any solid, liquid, gaseous or thermal irritant, or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, odors, noise, lead, oil or oil products, radiation, asbestos or asbestos-containing products, waste (including material to be recycled, reconditioned or reclaimed), and any electric, magnetic or electromagnetic field of any frequency, as well as any air emission, waste water, infectious medical waste, nuclear materials, or nuclear waste.

**23.20** **"Subsidiary"** means any entity which qualifies as a not-for-profit organization under the Internal Revenue Code and for which the **Parent Organization** has or controls the right to elect or appoint more than fifty percent (50%) of the Board of Directors or other governing body of such entity if such right exists:

    **(a)**    prior to inception date of the **Policy Period**;

    **(b)**    after  the inception date of the **Policy Period** and the assets of such entity do not exceed thirty-five percent (35%) of the total consolidated assets of the **Insured**

LIBERTY 000153

**Organization** as reflected in the **Parent Organization's** most recent audited consolidated financial statement;

(c) after the inception date of the **Policy Period** and the assets of such entity exceed thirty-five percent (35%) of the total consolidated assets of the **Insured Organization** as reflected in the **Parent Organization's** most recent audited consolidated financial statement but only upon the condition that the **Parent Organization:**

    (i) give written notice of such transaction to the Insurer within 90 days after the effective date of such transaction;

    (i) provide the Insurer with such information as the Insurer may require; and

    (ii) pay any additional premium required by the Insurer.

23.21 **"Third Party"** means any natural person who is an active or current customer, supplier, vendor, applicant, business invitee or other client of the **Insured Organization.**

23.22 **"Wrongful Act"** means:

(a) any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty, or **Employment Practices Wrongful Act** committed or attempted by the **Insured Persons** in their capacities as such or by the **Insured Organization;** or

(b) any matter claimed against the **Insured Persons** solely by reason of their status as **Insured Persons.**

23.23 **"Construction Defect"** means any actual or alleged defective, faulty or delayed construction or any other matter recognized as a construction defect under applicable common or statutory law, whether or not as a result of:

(a) faulty or incorrect design or architectural plans;

(b) improper soil testing;

(c) inadequate or insufficient protection from subsoil, ground water or earth movement or subsidence;

(d) the construction, manufacture or assembly of any tangible property;

(e) the failure to provide construction related goods or services as represented or to pay for such goods or services; or

(f) the supervision of such activities.

LIBERTY 000154

**23.24** **"Property Manager"** means any entity providing real estate property management services to the **Insured Organization** pursuant to a written contract.

In Witness Whereof, the Insurer has caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned on the Declarations Page by a duly authorized agent of the Insurer.

PRESIDENT
David H. Long

VICE PRESIDENT AND
SECRETARY
Dexter R. Legg

LIBERTY 000155



**Liberty**
Insurance
Underwriters Inc.

# ENDORSEMENT NO. 1

This endorsement, effective 10/26/13    forms part of

Policy No. CAP010206-0212                 Issued to Willowalk Condominium Association (

Issued By: **Graham Insurance Group, Inc.**

---

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ARIZONA ENDORSEMENT

As used in this Policy endorsement the terms "the Insurer", "we", "our " and "us" refer to Liberty Insurance Underwriters Inc. The term "Named Insured", "you" and "your" refer to the "Parent Organization" or "Named Real Estate Investment Trust" as shown on the Declarations Page of this Policy.

Irrespective of any other term or condition within the Policy, the Policy is hereby amended by the following:

**A. Cancellation**

> We may cancel this Policy only for non-payment of premium by mailing to the Named Insured written notice of cancellation at least 10 days prior to the effective date of the cancellation.

> We will mail notices of cancellation to the Named Insured at the mailing address we have on record.

> You may cancel this Policy by mailing notice to us stating when the cancellation will be effective.  You may not, however, cancel this Policy in anticipation of, or after the effective date of, a **Change In Control**.

**B. Non-renewal**

> If we decide not to renew this Policy, we will mail you notice of this decision at least 60 days before the Policy expires.

All other exclusions, conditions and limitations remain unchanged.



## LIBERTY INSURANCE UNDERWRITERS INC.

### ENDORSEMENT NO. 2

This endorsement, effective 10/26/13          forms part of

Policy No. CAP010206-0212                issued to Willowalk Condominium Association dba Tapestry on Centra

---

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

#### Amendment to Section 4.1

It is agreed that Section 4.1 of the Policy is hereby amended as follows:

Section 4.1 section is deleted and replaced with the following:

  **(a)**  bodily injury, sickness, disease, death; or

  **(b)**  emotional distress, mental anguish; or

  **(c)**  damage to, destruction of, or loss of use of any tangible property;

  provided that part (b) of this exclusion shall not apply to any **Claim** brought by or on behalf of any **Third Person,** or any past, present or prospective **Insured Person** for an **Employment Practices Wrongful Act.**

All other terms, conditions, and exclusions of this Policy remain unchanged.

Authorized Representative of
Liberty Insurance Underwriters Inc.

10/26/13
Date

LIUI00DO380040507

LIBERTY 000157



**Liberty**
Insurance
Underwriters Inc.

## LIBERTY INSURANCE UNDERWRITERS INC.

### ENDORSEMENT NO. 3

This endorsement, effective 10/26/13          forms part of

Policy No. CAP010206-0212                    Issued to Willowalk Condominium Association dba Tapestry on Centr:

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### Amendment to Section Settlement Clause

It is agreed that Section 2.3 of the Policy is hereby deleted and replaced with the following:

The Insurer has the right to negotiate the settlement of any **Claims** it deems expedient, but only with the **Insured's** consent.  If the **Insureds** withhold consent to such settlement, the Insurer's liability for such **Claim** is limited to the amount in excess of the Retention which the Insurer would have contributed to the settlement had the **Insured** consented to the settlement, and 70 percent (70%) of any additional covered **Loss,** including **Defense Costs,** incurred subsequent to such refusal to settle.

All other terms, conditions, and exclusions of this Policy remain unchanged.

_____

Authorized Representative of
Liberty Insurance Underwriters Inc.

10/26/13
_____
Date

LIBERTY 000158


**Liberty**
Insurance
Underwriters Inc.·.

## LIBERTY INSURANCE UNDERWRITERS INC.

### ENDORSEMENT NO. 4

This endorsement, effective 10/26/13          forms part of

Policy No.  CAP010206-0212          issued to  Willowalk Condominium Association dba Tapestry on Centr:

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**Deletion of Insured Versus Insured Exclusion**

It is agreed that **Section 4. Claim Exclusions** is amended by the deletion of 4.6 in its entirety.

All other terms, conditions, and exclusions of this Policy remain unchanged.

Authorized Representative of
Liberty Insurance Underwriters Inc.

10/26/13
Date

LIUI00DO380310507



**Liberty**
**International**
**Underwriters.**
Member of Liberty Mutual Group

# LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Insurer")

### ENDORSEMENT NO. 5

| | |
|---|---|
| **Effective Date:** | 10/26/13 |
| **Policy Number:** | CAP010206-0212 |
| **Issued To:** | Willowalk Condominium Association dba Tapestry on Centra |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### REDOMESTICATION ENDORSEMENT

Effective January 3, 2011, Liberty Insurance Underwriters Inc., previously a New York domiciled insurance company, is an Illinois domiciled insurance company.

Insured: Willowalk Condominium Association dba Tapestry on Central Condominium Association

Policy #: CAP010206-0212          Effective: 10/26/13

## POLICYHOLDER DISCLOSURE - TERRORISM INSURANCE PREMIUM NOTICE

**This notice contains important information about the Terrorism Risk Insurance Act and its effect on your policy. Please read it carefully.**

### THE TERRORISM RISK INSURANCE ACT

The Terrorism Risk Insurance Act, including all amendments ("TRIA" or the "Act"), establishes a program to spread the risk of catastrophic losses from certain acts of terrorism between insurers and the federal government. If an individual insurer's losses from a "certified act of terrorism" exceed a specified deductible amount, the government will reimburse the insurer for 85% of losses paid in excess of the deductible, but only if aggregate industry losses from such an act exceed $100 million. An insurer that has met its insurer deductible is not liable for any portion of losses in excess of $100 billion per year. Similarly, the federal government is not liable for any losses covered by the Act that exceed this amount. If aggregate insured losses exceed $100 billion, losses up to that amount may be pro-rated, as determined by the Secretary of the Treasury.

### MANDATORY OFFER OF COVERAGE FOR "CERTIFIED ACTS OF TERRORISM" AND DISCLOSURE OF PREMIUM

TRIA requires insurers to make coverage available for any loss that occurs within the United States (or outside of the U.S. in the case of U.S. missions and certain air carriers and vessels), results from a "certified act of terrorism" AND that is otherwise covered under your policy.

A "certified act of terrorism" means:

[A]ny act that is certified by the Secretary [of the Treasury], in concurrence with the Secretary of State, and the Attorney General of the United States

(i) to be an act of terrorism;

(ii) to be a violent act or an act that is dangerous to –

    (I) human life;    (II) property; or    (III) infrastructure;

(iii) to have resulted in damage within the United States, or outside of the United States in the case of –

    (I) an air carrier (as defined in section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States); or

    (II) the premises of a United States mission; and

(iv) to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

### MANDATORY PREMIUM DISCLOSURE STATEMENT

Your policy does not contain an exclusion for losses resulting from "certified acts of terrorism." Coverage for such losses is still subject to, and may be limited by, all other terms, conditions and exclusions in your policy.

The premium charge for this coverage for the policy period is *$0.00*

**YOU NEED NOT DO ANYTHING FURTHER AT THIS TIME.**

The summary of the Act and the coverage under your policy contained in this notice is necessarily general in nature. Your policy contains specific terms, definitions, exclusions and conditions. In case of any conflict, your policy language will control the resolution of all coverage questions. Please read your policy.

If you have any questions regarding this notice please contact your sales representative or agent.

LIBERTY 000161

**LIBERTY INTERNATIONAL UNDERWRITERS INC.**
(A member of Liberty Mutual Group and hereinafter "the Company")

**Effective Date:**   10/26/13

**Policy Number:**  CAP010206-0212

**Issued To:**   Willowalk Condominium Association dba Tapestry on Central Condominium Association

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

This endorsement modifies insurance provided under the above captioned policy.

**A.  Cap On Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.   The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.  Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

LIBERTY 000162



**Liberty**
Insurance
Underwriters Inc.

## LIBERTY INSURANCE UNDERWRITERS INC.

### ENDORSEMENT NO. 7

This endorsement, effective 10/26/13     forms part of

Policy No. CAP010206-0212     issued to Willowalk Condominium Association db

---

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### Application of Retention to Defense Costs

It is agreed that Section 23.14 (a) of the Policy is deleted and replaced as follows:

**23.14 (a)**     sums which the **Insureds** are legally obligated to pay solely as a result of any **Claim** insured by this Policy, including **Defense Costs,** damages, judgments, settlement amounts, legal fees and costs awarded pursuant to judgments, punitive or exemplary damages, and the multiple portion of any multiplied damage award; and

It is further agreed that for such **Claims**, Section 10 is deleted and replaced with the following:

**10.** **Retention:** The Insurer shall be liable to pay only the amount of covered **Loss** in excess of the applicable Retention amount set forth in Item IV of the Declarations.  Such applicable Retention shall be uninsured, shall be applicable to **Defense Costs** and shall be borne by the **Insured Organization.**

All other terms, conditions, and exclusions of this Policy remain unchanged.

Authorized Representative of

10/26/13

Date

LIBERTY 000163



## LIBERTY INSURANCE UNDERWRITERS INC.

### ENDORSEMENT NO. 8

This endorsement, effective 10/15/13          forms part of

Policy No. CAP010206-0212          issued to Willowalk Condominium Association dba Tapestry

---

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### Amendment to Declarations Page

It is agreed that Item I. of the Declarations Page is hereby amended to read as follows:

Name:  Willowalk Condominium Association dba Tapestry on Central Condominium Associa

Physical Address:   17 W. Vernon
                    Phoenix, AZ 85003

Mailing Address:   c/o FirstService Residential California, LLC
                   9000 East Pima Center Drive #300
                   Scottsdale, AZ 85258

All other terms, conditions, and exclusions of this Policy remain unchanged.

Authorized Representative of

10/15/13
Date

LIUI00DO381280207



## LIBERTY INSURANCE UNDERWRITERS INC.
55 Water Street, 18th Floor • New York, New York 10041
(a member of the Liberty Mutual Group and hereinafter "the Insurer")
Liberty Insurance Underwriters Inc.'s toll free number is: 800-677-9163



# COMMUNITY ASSOCIATION EXECUTIVE ADVANTAGE
# APPLICATION FOR COMMUNITY ASSOCIATION POLICY

THIS IS AN APPLICATION FOR A CLAIMS-MADE POLICY. THE POLICY FOR WHICH THIS APPLICATION IS MADE COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR DISCOVERY PERIOD, IF APPLICABLE, AND REPORTED TO THE INSURER AS SOON AS PRACTICABLE BUT IN NO EVENT LATER THAN 90 DAYS AFTER THE END OF THE POLICY PERIOD. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

UNLESS AMENDED BY ENDORSEMENT, AMOUNTS INCURRED AS DEFENSE COSTS SHALL BE IN ADDTITION TO THE LIMIT OF LIABILITY AND SHALL NOT BE APPLIED TO THE APPLICABLE RETENTION.

THE POLICY PROVIDES THE DUTY ON THE PART OF THE INSURER TO DEFEND.

*Instructions*
- Please complete all questions.
- The term **"Insured Organization"** means the parent organization whose directors and officers are proposed to be insured under the Community Association Policy for which this Application is made, along with any other entities in which such parent organization has or controls the right to elect more than 50% of the Board of Directors or other governing body of such entity if such right exists.

## 1. General Information

**Policy Effective Date:** 10/26/13          **Quote#:** 81000

a)  Name of the **Insured Organization:**  Willowalk Condominium Association dba Tapestry on Central Condom

b)  Address of the **Insured Organization:**  17 W. Vernon
Phoenix, AZ 85003

c)  Property Manager Information: Jamie George          Insurance Coordinator

Telephone:          602-682-5986

Fax:          480-551-6000

E-Mail Address:          jgeorge@rossmar.com

## 2. Association Type

Condominium

## 3. Previous Insurance

a)  Has the **Insured Organization** previously held or does it now have any directors and officers liability insurance or similar insurance? ................................................................................................ **Yes**

b)  Have you had any claim, notice of circumstance, or wrongful act which has been the subject of notice under such insurance in the last 5 years? ............................................................................... **Yes**

c)  Has any Insurer declined, cancelled, or refused to renew any directors and officers liability insurance or similar insurance within the past 5 years? ................................................................................ **No**

LIBERTY 000165

## 4. Underwriting Information

a) Total Number of Units:   292

b) Number of Commercial Units:   0

c) Number of Employees:   0

d) Average Unit Value:   400000

e) Does the association have the following recreational facilities:

Golf course ................. No

Boat slips .................... No

f) Are the recreational facilities exclusive to only members of the association? ............................ n/a

g) Has the association completed in the past year or does it plan a major improvement which may require a special assessment of the association members? ................................................................. No

## 5. Loss History

During the last 5 years has the **Insured Organization** or any of its directors, officers, or employees been involved in any litigation that could have a material impact on the **Insured Organization**?...... No

## 6. Prior Knowledge

Does anyone for whom insurance is sought have any knowledge or information of any act, error, omission, fact, or circumstance which may give rise to a **Claim** which may fall within the scope of the proposed insurance? ....................................................................................................................... No

**IT IS UNDERSTOOD AND AGREED THAT IF ANYONE FOR WHOM THIS INSURANCE IS SOUGHT HAS ANY KNOWLEDGE OF ANY SUCH ACT, ERROR, OMISSION, FACT, OR CIRCUMSTANCE, ANY CLAIM EMANATING THEREFROM SHALL BE EXCLUDED FROM COVERAGE UNDER THE PROPOSED INSURANCE.**

Signing this **Application** does not bind the undersigned to purchase or the Insurer to sell any insurance policy. If a policy is issued, this **Application** and its attachments shall be the basis of such policy and shall be deemed attached to and shall form part of such policy.

The undersigned, on behalf of all prospective **Insureds**, declares that the statements in this **Application** and its attachments are true and accurate. If there are material changes to any statements in this **Application** or its attachments prior to the inception date of the policy, the undersigned shall immediately notify the Insurer of such changes. Upon receipt of such notification, the Insurer shall have the right to modify or withdraw any outstanding terms or proposal.

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**This Application must be currently dated and signed by the association's insurance agent, broker, property manager or by a member of governing board of the association.**

Signed: Becky L Hayes

(Electronically Signed)

Title: Agent

Date: 10/15/13

**Submitting Producer:** Becky L Hayes

LaBarre/Oksnee Insurance Agency

30 Enterprise #180

Aliso Viejo, CA 92656

License Number (FL Producers Only)

LIBERTY 000166

AMERISAVE CONDOMINIUM/PUD PROJECT QUESTIONNAIRE

Borrower Name:      Kirk and Joan Gustin
Loan Number:        1094045
Unit Number:        302
Project Name:       Tapestry on Central

QUESTION 21:

    Is the HOA party to any current or pending litigation?

ANSWER:

    Yes.

    1.    On January 23, 2014, Tapestry on Central, LLC, et al., owners of certain commercial and residential units within that certain condominium project known as Tapestry on Central, filed a multi-count lawsuit against a number of defendants, including the Tapestry on Central Condominium Association, ("HOA"), in Maricopa County Superior Court (Case No. CV2014-090103, (the "Lawsuit"). Pursuant to the Lawsuit, Plaintiffs have alleged that the HOA breached various alleged contractual and other obligations owing to the Plaintiffs and seek declaratory relief and damages. The Plaintiffs are collectively seeking damages in an amount that "will exceed $1,500,000.00," plus interest, costs and attorneys' fees. Although this Lawsuit is in its infancy, the HOA believes the Lawsuit to be without merit and it intends to vigorously defend its interests in such Lawsuit.

    2.    On February 11, 2014, Matthew B. Hodeaux, et al. filed a multi-count lawsuit against the HOA in Maricopa County Superior Court Case No. CV2014-004795 alleging breaches of certain contracts and unjust enrichment, (the "Action"). The Plaintiffs are collectively seeking damages in the approximate principal amount of $496,000.00, plus interest, costs and attorneys' fees. Although the Action has not yet been served on the HOA and is in its infancy, the HOA believes the Action is without merit and it intends to vigorously defend its interests in such Action.

# Exhibit 2

1

**LANG BAKER & KLAIN, PLC**

2   8767 E. VIA DE COMMERCIO, SUITE 102
SCOTTSDALE, ARIZONA 85258

3   TELEPHONE (480) 947-1911
FilingKAL@lang-baker.com

4   KENT A. LANG, #010041
GEORGE H. KING, #013287

5   JAMES N. HANSON, #029091

6   *Attorneys for Plaintiffs*

7

COPY

FEB 11 2014

MICHAEL K. JEANES, CLERK
D. CADY
DEPUTY CLERK

8                 **SUPERIOR COURT OF ARIZONA**

9                     **MARICOPA COUNTY**

10  MATTHEW B. HODEAUX, ARCHITECT    Case No.   CV2014-004795
PLLC, an Arizona professional limited

11  liability company; MBH DEVELOPMENT    **Complaint**
LLC, an Arizona limited liability company,

12                                       (Breach of Contract / Unjust Enrichment)
Plaintiffs,

13
v.

14
TAPESTRY ON CENTRAL

15  CONDOMINIUM ASSOCIATION, an
Arizona non-profit corporation,

16
Defendant.

17

18       For their Complaint in this matter, Plaintiffs Matthew Hodeaux Architect, PLLC

19  ("Architect") and MBH Development, LLC ("MBH Development") hereby allege as

20  follows:

21                       **JURISDICTION AND VENUE**

22       1.    Architect is an Arizona professional limited liability company.

23       2.    MBH is an Arizona limited liability company.

24       3.    Tapestry on Central Condominium Association ("Tapestry") is an Arizona non-

25  profit corporation.

26       4.    Upon information and belief, Tapestry's principal place of business is in

27  Maricopa County.

28       5.    The events from which this cause of action arises took place in Maricopa County.

6.      The amount in controversy exceeds $10,000.

7.      This Court has jurisdiction over this matter.

8.      Maricopa County is the proper venue for this action.

**GENERAL ALLEGATIONS**

9.      Architect and MBH development reallege each and every allegation contained in this Complaint as if set forth fully herein.

10.     Plaintiffs had all appropriate licenses for their work during all relevant times.

**The Investigation Contract**

11.     On August 4, 2009, Architect and Tapestry entered into a contract for architectural services ("the Investigation Contract").

12.     Architect provided Tapestry with those architectural services pursuant to the Investigation Contract.

13.     Pursuant to the Investigation Contract, Tapestry owes Architect $201,375.14.

14.     Pursuant to the Investigation Contract, interest accrues on the outstanding principal at the rate of 18% per annum.

**The Design-Build Contract**

15.     Architect and Tapestry entered into a design-build contract ("the Design-Build Contract").

16.     Under the Design-Build Contract, Tapestry agreed to pay Architect an amount not to exceed $152,000 for "Phase I" services for survey, scope of repair and related charges, and also agreed to pay for design services ("Phase II") and construction oversight services ("Phase III").

17.     Tapestry wrongfully terminated the Design-Build Contract before the work in Phase I was complete.

18.     Architect was paid only $40,000 for $58,500 worth of work for Phase I.

19.     Pursuant to the Design-Build Contract, the damages for wrongful termination are "an early termination fee equal to two percent (2%) of the Total Gross Construction Costs which fee shall be not less than $100,000 and not more than $200,000."

20.    A $200,000 termination fee is justified.

21.    The total Tapestry owes Architect pursuant to the Design-Build Contract is at least $218,500.00.

### The MBH Development Contract

22.    On April 15, 2010, MBH Development and Tapestry entered into a contract for construction services and materials ("the MBH Development Contract").

23.    Per the MBH Development Contract, MBH Development provided Tapestry with construction services and materials and invoiced for those services and materials.

24.    The invoice dated January 4, 2011 is for $40,774.61.

25.    The invoice dated May 31, 2011 is for $35,320.

26.    Tapestry has failed to pay those invoices, as required by the MBH Development Contract.

### COUNT ONE

### (BREACH OF CONTRACT: THE INVESTIGATION CONTRACT)

27.    Architect realleges each and every allegation contained in this Complaint as if set forth fully herein.

28.    Under the Investigation Contract, Tapestry was obligated to repay Architect for the architectural services provided to Tapestry.

29.    Architect provided such services to Tapestry pursuant to the Investigation Contract.

30.    Tapestry failed and refused to pay Architect for those services.

31.    Tapestry's failure and refusal to pay Architect the payments due to Tapestry under the Investigation Contract constitutes a breach of the Investigation Contract.

32.    As a result of Tapestry's breach of the Investigation Contract, Architect has been damaged in the amount of at least $201,375.14 in unpaid principal.

WHEREFORE, Architect requests this Court to enter judgment in its favor and against Tapestry as follows:

A.    Awarding Architect compensatory damages in the amount of at least

1    $201,375.14, together with the interest accrued thereon calculated at the

2    highest rate allowable by law;

3    B.    Awarding Architect its reasonable attorneys' fees pursuant to A.R.S. § 12-

4          341.01;

5    C.    Awarding Architect its costs pursuant to A.R.S. § 12-341;

6    D.    Awarding Architect post-judgment interest;

7    E.    Awarding Architect its reasonable fees and costs incurred in collecting on

8          the judgment; and

9    E.    Granting Architect any other relief that this Court deems appropriate under

10         the circumstances.

11                              COUNT TWO

12         (BREACH OF CONTRACT: THE DESIGN-BUILD CONTRACT)

13    33.    Architect realleges each and every allegation contained in this Complaint as if set

14   forth fully herein.

15    34.    Under the Design-Build Contract, Tapestry was obligated to repay Architect for

16   the architectural services provided to Tapestry.

17    35.    As alleged above, Tapestry breached the Design-Build Contract by wrongful

18   termination and failure to pay.

19    36.    As a result of Tapestry's breach of the Design-Build Contract, Architect has been

20   damaged in the amount of at least $218,500.00.

21    WHEREFORE, Architect requests this Court to enter judgment in its favor and against

22   Tapestry as follows:

23    A.    Awarding Architect compensatory damages in the amount of at least

24          $218,500.00, together with the interest accrued thereon calculated at the

25          highest rate allowable by law;

26    B.    Awarding Architect its reasonable attorneys' fees pursuant to A.R.S. § 12-

27          341.01;

28    C.    Awarding Architect its costs pursuant to A.R.S. § 12-341;

1        D.    Awarding Architect post-judgment interest;

2        E.    Awarding Architect its reasonable fees and costs incurred in collecting on

3           the judgment; and

4        E.    Granting Architect any other relief that this Court deems appropriate under

5           the circumstances.

6    COUNT THREE

7    (UNJUST ENRICHMENT TO ARCHITECT'S DETRIMENT)

8    37.    Architect realleges each and every allegation contained in this Complaint as if set

9    forth fully herein.

10   38.    To the extent that the Investigation Contract or the Design-Build Contract may be

11   determined to be unenforceable, Architect has no adequate remedy at law and pleads unjust

12   enrichment in the alternative.

13   39.    The services performed by Architect for Tapestry conferred a benefit on

14   Tapestry.

15   40.    That benefit enriched Tapestry.

16   41.    Tapestry has not repaid Architect for that benefit, and to that extent Tapestry has

17   impoverished Architect.

18   42.    Architect did not provide the benefit to Tapestry gratuitously, but at the express

19   request of Tapestry.

20   43.    There is no justification for Tapestry's enrichment at the expense of Architect,

21   and it would be unfair for Tapestry to be able to retain the benefit of the services provided

22   by Architect without compensation to Architect.

23   44.    Tapestry has been unjustly enriched at the expense of Architect in the amount of

24   at least $419,875.14.

25   45.    This action arises out of contract.  Therefore, Architect is entitled to recover its

26   reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

27   WHEREFORE, Architect requests this Court to enter judgment in its favor and against

28   Tapestry as follows:

1    A.    Awarding Architect damages in the amount of at least $419,875.14,
2          together with the interest accrued thereon calculated at the highest rate
3          allowable by law;
4    B.    Awarding Architect its reasonable attorneys' fees pursuant to A.R.S. § 12-
5          341.01;
6    C.    Awarding Architect its costs pursuant to A.R.S. § 12-341;
7    D.    Awarding Architect post-judgment interest;
8    E.    Awarding Architect its reasonable fees and costs incurred in collecting on
9          the judgment; and
10   F.    Granting Architect any other relief that this Court deems appropriate under
11         the circumstances.

## COUNT FOUR

### (BREACH OF CONTRACT: THE MBH DEVELOPMENT CONTRACT)

14   46.    Architect realleges each and every allegation contained in this Complaint as if set
15   forth fully herein.

16   47.    Under the MBH Development Contract, Tapestry was obligated to repay MBH
17   Development for the services and materials provided to Tapestry.

18   48.    As alleged above, Tapestry breached the MBH Development Contract by failure
19   to pay the invoices submitted by MBH Development.

20   49.    As a result of Tapestry's breach of the MBH Development Contract, MBH
21   Development has been damaged in the amount of at least $76,094.61.

22   WHEREFORE, MBH Development requests this Court to enter judgment in its favor
23   and against Tapestry as follows:

24   A.    Awarding MBH Development compensatory damages in the amount of at
25         least $76,094.61, together with the interest accrued thereon calculated at
26         the highest rate allowable by law;
27   B.    Awarding MBH Development its reasonable attorneys' fees pursuant to
28         A.R.S. § 12-341.01;

- 6 -

1       C.     Awarding MBH Development its costs pursuant to A.R.S. § 12-341;

2       D.     Awarding MBH Development post-judgment interest;

3       E.     Awarding MBH Development its reasonable fees and costs incurred in

4              collecting on the judgment; and

5       E.     Granting MBH Development any other relief that this Court deems

6              appropriate under the circumstances.

7                         **COUNT FIVE**

8            **(UNJUST ENRICHMENT TO MBH DEVELOPMENT'S DETRIMENT)**

9     50.    MBH Development realleges each and every allegation contained in this

10 Complaint as if set forth fully herein.

11     51.    To the extent that the MBH Development Contract may be determined to be

12 unenforceable, MBH Development has no adequate remedy at law and pleads unjust

13 enrichment in the alternative.

14     52.    The services performed by MBH Development for Tapestry conferred a benefit

15 on Tapestry.

16     53.    That benefit enriched Tapestry.

17     54.    Tapestry has not repaid MBH Development for that benefit, and to that extent

18 Tapestry has impoverished MBH Development.

19     55.    MBH Development did not provide the benefit to Tapestry gratuitously, but at

20 the express request of Tapestry.

21     56.    There is no justification for Tapestry's enrichment at the expense of MBH

22 Development, and it would be unfair for Tapestry to be able to retain the benefit of the

23 services provided by Architect without compensation to MBH Development.

24     57.    Tapestry has been unjustly enriched at the expense of MBH Development in the

25 amount of at least $76,094.61.

26     58.    This action arises out of contract.  Therefore, MBH Development is entitled to

27 recover its reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

28     WHEREFORE, MBH Development requests this Court to enter judgment in its favor

and against Tapestry as follows:

A.  Awarding MBH Development in the amount of at least $76,094.61, together with the interest accrued thereon calculated at the highest rate allowable by law;

B.  Awarding MBH Development its reasonable attorneys' fees pursuant to A.R.S. § 12-341.01;

C.  Awarding MBH Development its costs pursuant to A.R.S. § 12-341;

D.  Awarding MBH Development post-judgment interest;

E.  Awarding MBH Development its reasonable fees and costs incurred in collecting on the judgment; and

F.  Granting MBH Development any other relief that this Court deems appropriate under the circumstances.

DATED this 11th day of February, 2014.

LANG BAKER & KLAIN, PLC

By: _____
Kent A. Lang
George H. King
James N. Hanson
*Attorneys for Plaintiffs*

# Exhibit 3



Liberty™
International
Underwriters

Lissa N. Ziemkowski
55 Water Street, 23rd Floor
New York, NY 10041
Telephone #:  (212) 208-2874
Fax #:  (603) 430-5617
Lissa.Ziemkowski@Libertyiu.com

September 17, 2014

VIA E-MAIL AND
CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Howard Kunkle
Willowalk Condominium Association
c/o City Property Management
4645 E. Cotton Gin Loop
Phoenix, AZ 85040

| | |
|---|---|
| Re: | Community Association Executive Advantage Policy |
| Insured: | Willowalk Condominium Association dba Tapestry on Central Condominium Association |
| Insurer: | Liberty Insurance Underwriters Inc. |
| Policy No: | CAP010206-0212 |
| Policy Period: | October 26, 2013 to October 26, 2014 |
| Limit of Liability: | $1,000,000 |
| Retention: | $5,000 |
| File: | Matthew B. Hodeaux |
| File No.: | CHISPC000071927 |

Dear Mr. Kunkle:

Further to our prior correspondence, Liberty International Underwriters, on behalf of Liberty Insurance Underwriters Inc. ("Liberty") has received and reviewed a copy of the petition filed by Matthew B. Hodeaux, Architect PLLC ("Hodeaux") and MBH Development LLC ("MBH") against Tapestry on Central Condominium Association pending in the Superior Court of Arizona, Maricopa County.  This matter has been submitted for coverage under the Community Association Executive Advantage Policy No. CAP010206-0212 (the "Policy") issued to Willowalk Condominium Association dba Tapestry on Central Condominium Association (the "Association") by Liberty.  I am handling this matter on behalf of Liberty.  Please note that the

terms in bold, not otherwise defined, refer to terms defined in the Policy. Please provide a copy of this letter to the **Insureds** as soon as possible.

We have now reviewed and considered the provisions of the Policy in light of the materials and information we have received to date. Liberty recognizes that any allegations of wrongdoing are entirely unsubstantiated and nothing contained in this letter is intended to imply that Liberty believes that the allegations have any factual or legal merit whatsoever. Nevertheless, we must regretfully advise that there appears to be no coverage available under the Policy for this matter for reasons set forth in detail below.

Factual Summary

On or around February 11, 2014, Hodeaux and MBH filed a Petition against the Association in the Superior Court of Arizona, Maricopa County regarding alleged nonpayment of contracts. Specifically, plaintiffs contend that the Association entered into various contracts with plaintiffs related to the investigation and repair of construction defects in the condominium building and then failed to pay for services provided. The Petition contains five causes of action: breach of contract (the Investigation Contract), breach of contract (the Design-Build Contract), unjust enrichment to Hodeaux's detriment, breach of contract (the MBH Development Contract), and unjust enrichment to MBH's detriment. In the Petition, Hodeaux seeks compensatory damages of at least $419,875.14 together with interest accrued thereon, post-judgment interest, attorneys' fees, costs, and fees and costs in collecting on the judgment. MBH seeks compensatory damages of at least $76,094.61 together with interest accrued thereon, post-judgment interest, attorneys' fees, costs, and fees and costs in collecting on the judgment.

The Policy

The Policy has a Policy Period of October 26, 2013 to October 26, 2014. The Limit of Liability is $1 million in the aggregate for the Policy Period and there is a $5,000 Retention applicable to each Claim pursuant to Item IV of the Declarations, and other applicable terms and conditions of the Policy. Defense Costs are applied against the Retention.

Consistent with its terms and conditions, the Policy provides that Liberty will pay on behalf of the **Insureds** all **Loss** which they shall become legally obligated to pay as a result of a **Claim** first made during the **Policy Period** or **Discovery Period,** if applicable, against the **Insureds** for a **Wrongful Act** which takes place before or during the **Policy Period**.

Section 23.3 of the Policy defines **Claim** to mean:

> (a) a written demand for monetary or non-monetary relief against an **Insured**;
>
> (b) the commencement of a civil or criminal judicial proceeding or arbitration against an **Insured**;
>
> (c) the commencement of a formal criminal, administrative or regulatory proceeding or investigation against an **Insured**, including any brought before the Equal Employment Opportunity Commission or any similar state, local or territorial governmental agency; or

including any appeal therefrom.  A **Claim** will be deemed first made on the date an **Insured** receives a written demand, complaint, indictment, notice of charges, or order of formal investigation.

Section 23.22 of the Policy defines **Wrongful Act** to include, "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty, or **Employment Practices Wrongful Act** committed or attempted by the **Insured Persons** in their capacities as such or by the **Insured Organization**."

<u>Coverage Discussion</u>

The Petition, served on the Association on or around February 11, 2014, constitutes a **Claim** first made during the **Policy Period** for a **Wrongful Act**.  Nevertheless, the Policy contains certain provisions that eliminate coverage for this matter.

Specifically, Exclusion 4.11 of the Policy provides that the Policy does not apply to any **Claim** made against any **Insured** based upon, arising from, or in any way related to any **Construction Defect**.  Section 23.23 defines "**Construction Defect**" as:

> any actual or alleged defective, faulty or delayed construction or any other matter recognized as a construction defect under applicable common or statutory law, whether or not as a result of:
>
> (a) faulty or incorrect design or architectural plans;
>
> (b) improper soil testing;
>
> (c) inadequate or insufficient protection from subsoil, ground water or earth movement or subsidence;
>
> (d) the construction, manufacture or assembly of any tangible property;
>
> (e)  the failure to provide construction related goods or services as represented or to pay for such goods or services; or
>
> (f)  the supervision of such activities.

Based upon our review of the information now provided, including, but not limited to, the Petition, the Association's Answer and Counterclaim, Tiffany & Bosco's August 14, 2014 letter, Hodeaux's August 1, 2009 "Proposal for Construction Deficiencies Inspection at Tapestry on Central," and the Interim Contract Term Sheet for the Design-Build Contract ("Interim Contract"), it is clear that the contracts at issue involve an underlying construction defect claim. In fact, in his letter dated August 14, 2014, Kevin Nelson of Tiffany & Bosco advised that, "Carpenter is not known for its ability to defend against factually complex multi-year non-payment claims associated with multi-party construction defect claims.  That is precisely what is at issue in the Lawsuit."

Furthermore, in the Association's Counterclaim it is alleged that "[t]he main purpose of the Investigation Contract was for [Hodeaux] to provide the Association with a deficiency report including photographs and an initial repair report in order to assist the Association with the mediation of construction defect claims." Additionally, the Interim Contract provides that the Association,

> is facing a number of design and construction defects. In addition, [the Association] is managed by a board of directors who need assistance in retaining professionals, overseeing their activities, managing their proposals, fees and invoices and generally providing strategic guidance, design and construction services and coordination in dealing with all of the interrelated construction claims facing [the Association]. [The Association] desires to engage [Hodeaux] and [Hodeaux] will provide [the Association] with professional services consistent with the Scope of Work more specifically outlined herein.
>
> [The Association] is currently engaged in a confidential settlement process with certain third parties relating to the indemnification, scope of repair, design and construction and regarding certain construction claims and defects with design and construction at Tapestry for which [Hodeaux] has a separate agreement with [the Association] under different terms to render expert professional advise and witness testimony for the investigation and identification of certain construction claims....

The services being provided as identified in Exhibit B to the Interim Contract include participating in the underlying construction defect settlement process as well as development and implementation of business strategies related to resolution of construction and repair issues and coordinating with legal issues related to the resolution of construction claims.

Accordingly, the **Claim** is based upon, arises from, or is in any way related to a **Construction Defect**, as defined by the Policy. As such, Exclusion 4.11 eliminates coverage for this **Claim** in its entirety and there is no coverage under the Policy for this matter.

In addition, because the contracts at issue involve the repair, design, and building of real property, Liberty reserves its rights under Exclusion 4.12, which provides that the Policy does not apply to any **Claim** made against any **Insured**:

> based upon, arising from, or in any way related to any actual or alleged liability of an **Insured**, in whole or in part, in the capacity as a builder or developer, or in the capacity of a sponsor of the **Organization**, or of an **Insured** affiliated with such builder, developer or sponsor and which is related to actual or alleged misconduct on the part of such builder, developer or sponsor, including but not limited to actual or alleged conflict of interest, self-dealing, or disputes concerning conversion, construction or development.

Please note that Exclusion 5.2 of the Policy provides that Liberty shall not be liable to pay any **Loss** in connection with any **Claim** for any actual or alleged liability of any **Insured** under any contract or agreement, express or implied, written or oral, except for employment related obligations which would have attached absent such contract or agreement, provided, however,

that this exclusion shall not apply to Liberty's duty to defend and to pay **Defense Costs**. As this matter involves an alleged breach of contract, Liberty reserves its rights under Exclusion 5.2, which would limit coverage solely to **Defense Costs** in this matter, and not indemnity.

If you have not done so, we recommend that you notify all other potentially applicable carriers regarding this matter.

There may be additional grounds for Liberty to deny or limit coverage for this matter, although in light of the above, it appears unnecessary to discuss these at this time. However, we reserve the right to supplement Liberty's coverage position for this matter as factual and legal developments warrant.

<u>Reservation of Rights</u>

In addition to the foregoing disclaimer, Liberty expressly reserves all rights and defenses under the Policy and at law including the right to deny coverage based upon any of the foregoing reasons and/or additional and alternative bases as other terms, conditions, exclusion, and endorsements of the Policy, including matters contained in any Application, are found to apply. Liberty's position with respect to coverage for this matter is based on the allegations and presently known facts. We urge you to keep us apprised as additional relevant facts and allegations develop in this matter so that we may be in a position to promptly advise you of the effect of such fact and allegations, if any, on the coverage afforded by the Policy.

If you disagree with our assessment, please forward to us any additional information which you believe is relevant to our analysis. We thank you for your cooperation and look forward to receiving any additional information that you may wish to provide. Please feel free to contact me should you have any questions or comments regarding this matter.

Very truly yours,

*Lissa N. Ziemkowski*

Lissa N. Ziemkowski
Specialty Casualty Claims
Liberty International Underwriters

cc:     Todd Weber
        Liberty International Underwriters (*via e-mail*)

        Leslie O'Connor
        LaBarre/Oksnee Insurance (*via e-mail*)

Christopher A. LaVoy (016609)

**TB** **TIFFANY & BOSCO**
P.A.

SEVENTH FLOOR CAMELBACK ESPLANADE II
2525 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016B4237
TELEPHONE: (602) 255-6000
FACSIMILE: (602) 255-0103
E-MAIL: cal@tblaw.com
*Attorneys for plaintiff*

CHRIS DEROSE, CLERK
BY
M. Valenzuela DEP
A. VALENZUELA, FILED

18 SEP -6 PM 4: 32

## SUPERIOR COURT OF ARIZONA

## MARICOPA COUNTY

CV 2018 - 011944

Tapestry on Central Condominium
Association,

                Plaintiff,

v.

Liberty Insurance Underwriters Inc.,

                Defendant.

Case No.:

**CERTIFICATE OF COMPULSORY
ARBITRATION**

    The undersigned certifies that he knows the dollar limits and any other limitations set forth by the local rules of practice for the applicable superior court, and further certifies that this case is NOT subject to compulsory arbitration, as provided by Rules 72 through 77 of the Arizona Rules of Civil Procedure.

    DATED this 6th day of September, 2018.

TIFFANY & BOSCO, P.A.

By: _____
    Christopher A. LaVoy
    Seventh Floor Camelback Esplanade II
    2525 East Camelback Road
    Phoenix, Arizona 85016
    *Attorneys for plaintiff*



Office Distribution

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY

**FILED**
11/14/2018
by Superior Court Admin
on behalf of Clerk of the
Superior Court

Ct. Admin
Deputy

11/10/2018

### COURT ADMINISTRATION

**Case Number:** CV2018-011944

**Tapestry On Central Condominium Association**

**V.**

**Liberty Insurance Underwriters Inc**

The Judge assigned to this action is the Honorable Christopher A. Coury

## NOTICE OF INTENT TO DISMISS FOR LACK OF SERVICE

You are hereby notified that the complaint filed on 09/06/2018 is subject to dismissal pursuant to Rule 4 (i) of the Arizona Rules of Civil Procedure. The deadline for completing service is 12/05/2018. If the time for completing service has not been extended by the court and no defendants have been served by this date, the case will be dismissed without prejudice.

All documents required to be filed with the court should be electronically filed through Arizona Turbo Court at www.azturbocourt.gov.

Superior Court of Maricopa County - integrated Court Information System
**Endorsee Party Listing**
Case Number: CV2018-011944

| Party Name | Attorney Name | |
|---|---|---|
| Tapestry On Central Condominium Association | Christopher A Lavoy | Bar ID: 016609 |

ORIGINAL

CHRIS DEROSE, CLERK
RECEIVED CCC #2
DOCUMENT DEPOSITORY

18 DEC -4  AM 10: 13

FILED
BY A. VALENZUELA, DEP

Christopher A. LaVoy (016609)

 **TIFFANY & BOSCO**
P.A.

SEVENTH FLOOR CAMELBACK ESPLANADE II
2525 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-4237
TELEPHONE: (602) 255-6000
FACSIMILE: (602) 255-0103
E-MAIL: cal@tblaw.com

*Attorneys for plaintiff*

## SUPERIOR COURT OF ARIZONA

## MARICOPA COUNTY

| | |
|---|---|
| Tapestry on Central Condominium Association,<br><br>                    Plaintiff,<br><br>v.<br><br>Liberty Insurance Underwriters Inc.,<br><br>                    Defendant. | Case No.:   CV 2018~011944<br><br>**SUMMONS**<br><br>If you would like legal advice from a lawyer,<br>contact the Lawyer Referral Service at<br>602-257-4434<br>or<br>www.maricopalawyers.org<br>Sponsored by the<br>Maricopa County Bar Association |

**THE STATE OF ARIZONA TO THE FOLLOWING DEFENDANT:**

**Liberty Insurance Underwriters Inc.**

**YOU ARE HEREBY SUMMONED** and required to appear and defend, within the time applicable, to this action in this Court. If served within Arizona, you shall appear and defend within 20 days after the service of the Summons and Complaint upon you, exclusive of the date of service. If served out of the State of Arizona, whether by direct service, by registered or certified mail, or by publication, you shall appear and defend within 30 days after the service of the Summons and Complaint upon you is complete, exclusive of the date of service. Where process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of legal process against it in this state, the insurer shall not be required to appear, answer or plead until expiration of 40 days after date of such service upon the Director. Service by registered or certified mail without the State of Arizona is complete 30 days after the date of filing the receipt and affidavit of

1

1   service with the court. Service by publication is complete 30 days after the date of first

2   publication. Direct service is complete when made. Service upon the Arizona Motor

3   Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and

4   return receipt or Officer's Return. Ariz. R. Civ. P. 4; A.R.S. §§ 20-222, 28-2326, 28-2327.

5       **YOU ARE HEREBY NOTIFIED** that in case of your failure to appear and defend

6   within the time applicable, judgment by default may be rendered against you for the relief

7   demanded in the Complaint.

8       **YOU ARE HEREBY NOTIFIED** that requests for reasonable accommodation for

9   persons with disabilities must be made to the division assigned to the case by parties at

10  least 3 judicial days in advance of a scheduled court proceeding.

11      **YOU ARE CAUTIONED** that in order to appear and defend, you must file an

12  Answer or proper response in writing with the Clerk of this Court, accompanied by the

13  necessary filing fee, within the time required, and you are required to serve a copy of any

14  Answer or response upon the Plaintiff's attorney. Ariz. R. Civ. P. 5, 5.2; A.R.S. § 12-311.

15      The name and address of Plaintiff's attorney is:

16              Christopher A. LaVoy
                TIFFANY & BOSCO, P.A.
17              Seventh Floor Camelback Esplanade II
                2525 East Camelback Road
18              Phoenix, Arizona 85016-4237

19                                      SEP 0 6 2018

20  **SIGNED AND SEALED** this date: _____   CHRIS DEROSE, CLERK

21                  MARICOPA COUNTY SUPERIOR COURT

22

23                  By: _____

24                      Deputy Clerk
                    **A. Valenzuela**
25                  **Deputy Clerk**

26

                                2

# Liddy Legal Support Services

PO Box 2007, Phoenix, AZ 85001
63 E. Pennington St., #102, Tucson, AZ 85702
2700 Woodlands Village Blvd., #300-420, Flagstaff, AZ 86001
Phoenix 602-297-0676, Tucson 520-628-2824, Flagstaff 928-225-7737

CHRIS DEROSE, CLERK
RECEIVED COS #2
DOCUMENT REPOSITORY

18 DEC -4  AM 10: 14

Client File # 18832-006
Account   # 0666
Invoice    # 323494
Liddy      # 283555-1

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

### IN AND FOR THE COUNTY OF MARICOPA

TAPESTRY ON CENTRAL CONDOMINIUM
ASSOCIATION,

                                    Plaintiff(s),

vs.

LIBERTY INSURANCE UNDERWRITERS, INC.,

                                    Defendant(s).

**CERTIFICATE OF SERVICE
BY PRIVATE PROCESS SERVER**
Case No. CV2018-011944

**ENTITY/PERSON TO BE SERVED:** Liberty Insurance Underwriters, Inc. c/o Arizona Director of Insurance, Statutory Agent

**PLACE OF SERVICE:**          100 North 15th Ave., Suite 102, Phoenix, AZ 85007

**DATE OF SERVICE:** On the ___30th___ day of __November__ , _2018_ at __2:25__ PM      County __Maricopa__

[ ]  PERSONAL SERVICE  [X]  Left a copy with a person authorized to accept service.      [ ]  At this usual place of abode, I left a copy with a person of suitable age and discretion residing therein.

**Name of Person Served and Relationship/Title** | Served on Arizona Director of Insurance, Statutory Agent, by serving Rosalie Osorio, Administration Assistant, authorized to receive and accept service of process in the state of Arizona by Arizona Director of Insurance.

on _____11/30/2018_____ we received the following documents for service:

2 sets of each; Summons, Complaint and Certificate of Compulsory Arbitration.
Tendering a Service of Process Fee of $15.00.

**Received from TIFFANY & BOSCO, P.A., ( CHRISTOPHER LAVOY #016609 )**

PROCESS SERVER:   Floyd R. Brown #8388

The undersigned states: That I am a certified private process server in the county of Maricopa and am an Officer of the Court.

SIGNATURE OF PROCESS SERVER: _____        Date: 11/30/2018

| Item | Amount |
|------|--------|
| Service of Process | $16.00 |
| Minimum Mileage | $16.00 |
| Rush Charge Service | $30.00 |
| Fee Advance | $15.00 |
| Fee Adv. S/C (10%) | $1.50 |
| Doc. Prep. Fee | $10.00 |

Tax ID# 90-0533870
I declare under penalty of perjury that the foregoing is true and correct and was executed on this date.

         Total      $88.50



**Arizona Department of Insurance**
# RECEIPT OF PAYMENT

*The mission of the Department of Insurance is to faithfully execute state insurance laws in a manner that protects insurance consumers and encourages robust competition and economic development.*

| Date: | 11/30/2018 |
|---|---|
| Receipt #: | 0072336 |

ADDITIONAL INFORMATION:
LIBERTY INSURANCE UNDERWRITERS INC.-CV
2018-011944

| Payor/Licensee Name: | **LIDDY LEGAL SUPPORT SERVICES** |
|---|---|

| Description of Fee | Amount |
|---|---|
| OTHER, SERVICE OF PROCESS FEES | $15.00 |
| **Transaction Total:** | **$15.00** |

| Payment Information | |
|---|---|
| **Amount Paid by Check 46445:** | $15.00 |
| **Credit Tendered:** | $0.00 |
| **Cash Tendered:** | $0.00 |
| **Change Returned:** | $0.00 |
| **Payment Total:** | **$15.00** |

**The Arizona Department of Insurance continually works to improve service to its customers.
Please send, fax or e-mail any ideas on how we can improve to**

Scott B. Greenberg, Deputy Director
100 N. 15th Ave. # 102
Phoenix, Arizona  85007-2624
Fax: 602.912.8419
e-mail: SGreenberg@azinsurance.gov.