**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tapestry on Central Condominium Association, | No. CV-18-04857-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Liberty Insurance Underwriters Incorporated, | |
| Defendant. | |

At issue is Plaintiff's Memorandum Regarding Defense Costs (Doc. 48, "Memo") filed in response to the Court's February 13, 2020 Order granting in part and denying in part both parties' cross-Motions for Summary Judgment ("Summary Judgment Order") (Doc. 47, "Order"). Defendant filed a Response (Doc. 49, "Resp.") to Plaintiff's Memorandum and Plaintiff filed a Reply (Doc. 52, "Reply").

**I.    BACKGROUND**

This case involves an insured, Plaintiff (also referred to throughout as "Tapestry"), suing its insurer, Defendant, for breach of contract for Defendant's failure to provide a defense to Plaintiff in an underlying action.[1] The underlying action involved two plaintiffs suing Tapestry for the alleged breach of three contracts: Mark Hodeaux ("Hodeaux") sued for breach of two contracts, and MBH Development LLC ("MBH") sued on one contract.

---

[1] Specifically, Plaintiff tendered the underlying action to Defendant on June 12, 2014. (Doc. 31 ¶ 28.) After several months of investigation, Defendant sent Plaintiff a letter dated September 17, 2014, stating the underlying action was not covered under the policy and withdrawing its defense. (Doc. 30 Ex. 9.)

The insurance policy at issue has a Loss Exclusion section that provides Defendant "shall not be liable to pay any Loss in connection with any Claim . . . for any actual or alleged liability of any Insured under any contract or agreement, express or implied, written or oral[.]" (Doc. 30 Ex. 5, "Policy" § 5.2.) Put simply, Defendant does not owe a duty to indemnify Claims asserting a breach of contract against Tapestry.[2]

What makes this case unique—as detailed in the Summary Judgment Order and seemingly recognized by the parties throughout this litigation—is that the policy's Loss Exclusion for breach of contract Claims "shall not apply to the Insurer's duty to defend and to pay Defense Costs." (Policy § 5.2.) The policy thus contemplates a circumstance in which Defendant may have a duty to defend in a breach of contract action even if there is no possibility that action is covered by the policy's insuring clause. This diverges from the general insurance law principle that "if the alleged facts fail to bring the case within the policy coverage, the insurer is free of [the] obligation" to defend. *Kepner v. W. Fire Ins. Co.*, 509 P.2d 222, 224 (Ariz. 1973).

Presumably because the underlying action by Hodeaux and MBH only asserted breach of contract claims (and alternatively, unjust enrichment), Plaintiff never seriously contended in this case that it was entitled to indemnity in the underlying action or that indemnity coverage ever existed. As just noted, however, the Loss Exclusion that applied to Claims against Tapestry alleging breach of contract did not apply to or affect Defendant's duty to defend those same Claims, assuming no other Claim Exclusion applied. (*See* Policy § 5.2.) The main issue in the instant case was always, then, whether Defendant breached its duty to defend under the policy. Defendant maintained it owed no duty because the underlying Claim(s) related to construction defects, an enumerated Claim Exclusion under the policy.[3]

---

[2] A Claim is defined under the policy as: "(a) a written demand for monetary or non-monetary relief against [Tapestry]; (b) the commencement of a civil or criminal judicial proceeding or arbitration against [Tapestry]; (c) the commencement of a formal criminal, administrative or regulatory proceeding or investigation against [Tapestry]; or including any appeal therefrom." (Policy § 23.3.)

[3] That exclusion states: "This Policy does not apply to any Claim made against any Insured . . . based upon, arising from, or in any way related to any Construction Defect."

In the Summary Judgment Order, the Court determined the underlying action consisted of two "Claims" under the policy: one brought by Hodeaux and one by MBH. It did so by examining, among other things, the policy's multiple definitions of Claim, the limited case law on the issue, and the reasons that developed over time for providing different definitions of a Claim in a claims-made policy. (Order at 9.) The Court next determined Hodeaux's Claim related to a construction defect and was therefore excluded under the policy. However, it found Defendant failed to show that at the time it withdrew its defense of the underlying action, Defendant had uncontested facts that MBH's Claim related to construction defects or that it triggered some other policy exclusion. *See Transamerica Ins. Grp. v. Meere*, 694 P.2d 181, 190 (Ariz. 1984) ("If [uncontested] facts plainly take the case outside policy coverage, there is no duty to defend."). Accordingly, Defendant breached its duty to defend Plaintiff against MBH's Claim, but owed no duty to defend against Hodeaux's Claim. (Order at 13.)

Finally, the Court addressed the mixed action rule, which states an insurer must defend an entire action, including the noncovered portions, if the action contains allegations that bring at least some of it even potentially within the policy's indemnity coverage. *W. Cas. & Sur. Co. v. Int'l Spas of Ariz., Inc.*, 634 P.2d 3, 6 (Ariz. Ct. App. 1981). The rationale for the rule is that "it is impossible to determine the basis upon which the [underlying] plaintiff will recover (if any) until the action is completed." *Id.* The Court concluded the mixed action rule had limited application here. Indemnity did not appear at issue in the underlying action and Plaintiffs have not contended otherwise. This negates the uncertainty of determining what Claims are or are not covered that the rule is designed to mitigate. Moreover, because the mixed action rule is considered prophylactic and the underlying action had already been resolved, the Court concluded it would be illogical to require Defendant to retroactively pay defense costs for a Claim that was neither entitled to indemnity nor defense under the terms of the policy.

---

(Policy § 4.11.) A Construction Defect is further defined "any actual or alleged defective, faulty or delayed construction or any other matter recognized as a construction defect under applicable common or statutory law[.]" (Policy § 23.23.)

Accordingly, the Court found Defendant owed defense costs associated only with the MBH Claim. It ordered Plaintiff to submit documentation of those costs and now resolves the allocation issue.

## II. ANALYSIS

Plaintiff submitted with its summary judgment motion invoices from its counsel in the underlying action, Tiffany and Bosco, delineating their defense costs. (Doc. 30 Exs. 10–29.) Plaintiff now refers to those billing entries and contends that when the insurer has breached its duty to defend, the insurer—rather than the insured—has the burden of demonstrating allocability. (Memo at 4.) The Court agrees.

The Court preliminarily notes that, like in the summary judgment phase of this case, an extensive search of case law both in Arizona and nationwide revealed no case directly on point. This is because of the policy's uncommon provision that mandates a defense notwithstanding no possibility for indemnification—precisely the situation that occurred in this case. Moreover, the Court and the parties did not locate any cases in Arizona outlining the approach to reimbursement and/or apportionment of defense costs even in the more familiar case where at least some of the underlying action was potentially covered by the policy's indemnity provision.[4]

The Court therefore adopts the approach of jurisdictions for actions involving a breach of the duty to defend when some claims were covered and some were not by the policy's indemnity provision. The Court finds the framework applies even when stripped of the indemnity layer. In those cases, an insurer must bear the entire costs of defense when there is no reasonable means of apportioning the defense costs between the covered and noncovered items. *E.g.*, *Hogan v. Midland Nat'l Ins. Co.*, 476 P.2d 825, 831 (Cal. 1970);

---

[4] The Court did find one case from this district that addressed the situation where, after a court concludes no coverage exists in the underlying action, the insurer sues its insured to recover defense costs expended in defending the action. *See Great Am. Assurance Co. v. PCR Venture of Phoenix LLC*, 161 F. Supp. 3d 778, 787–88 (D. Ariz. 2015). There, in absence of state law on the issue, the court anticipated that the Arizona Supreme Court would not allow an insurer to recoup its costs defending the underlying action. Because the present situation deals with an insured suing the insurer, the Court finds *Great American Assurance Company* of limited assistance.

*Hebela v. Healthcare Ins. Co.*, 851 A.2d 75, 83 (N.J. Super. Ct. App. Div. 2004); *Crist v. Ins. Co. of N. Am.*, 529 F. Supp. 601, 604–05 (D. Utah 1982); *Ins. Co. of N. Am. v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212, 1224 (6th Cir. 1980); *Nat'l Steel Const. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 543 P.2d 642, 644 (Wash. Ct. App. 1975). The corollary, then, is that when the defense costs can be readily apportioned between covered and noncovered claims, the insured is responsible for the costs of the noncovered claims.

Under this framework, because Plaintiff ultimately defended the underlying action, it must produce documentary evidence of the costs and fees expended therein and the reasonableness of the same. This burden has been described as "relatively slight." *Hebela*, 851 A.2d at 86; *Certain Underwriters at Lloyds of London v. Ill. Nat'l Ins. Co.*, 2016 WL 6876497, at *6 (S.D.N.Y. Sept. 30, 2016). And because it was Defendant's breach that forced Plaintiff to defend the entire underlying action, thereby giving rise to the later need for this action, Defendant bears the burden of demonstrating that apportionment of those fees is possible. Some courts have made this a very heavy burden, requiring the insurer Defendant produce "undeniable evidence of the allocability" to obtain "even partial freedom from liability for harm to the insured." *Hogan*, 476 P.2d at 831. Under the present circumstances, the Court agrees with the *Hebela* court that the insurer's burden of persuasion as to whether those fees can be allocated and how they should be allocated is that of a preponderance of the evidence. *Hebela*, 851 A.2d at 87. This does not require scientific certainty on the part of Defendant. *Id.* at 83–84.

Here, Plaintiff presented documentary evidence of the defense costs expended in the underlying action. (*See* Doc. 30 Exs. 10–29.) Altogether, Tapestry paid $116,826.14 to defend the action, a figure Defendant does not dispute. (Doc. 29 ¶ 26; Doc. 35 ¶ 26.) Nor does Defendant challenge the reasonableness of the hours spent or the attorneys' rates, and the Court, in its experience, finds both are reasonable in light of the subject matter of the underlying action and the local forum's average attorney rates for similar matters. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Instead, Defendant first contends Plaintiff "failed to show either the existence or amount of defense costs incurred in connection with the MBH Claim" and therefore argues Plaintiff should get nothing. (Resp. at 6.) This argument is rooted in the Court's conclusion that the underlying action constituted two Claims and the requirement that Plaintiff submit "documentation of the attorney time spent defending *only* MBH's Claim." (Order at 15) (emphasis added). However, the Court is persuaded that the rules and burdens of proof above apply regardless of whether the underlying action constituted one Claim or two. It was Defendant who wrongfully refused to provide a defense to the MBH Claim, and consequently, it is Defendant, not Plaintiff, who bears the responsibility of determining whether the costs associated with defending that Claim can be adequately parsed from those associated with the Hodeaux Claim.

Defendant submits a proposed apportionment based on the invoices in the event the Court rejects—which it does—Defendant's above argument that Plaintiff gets nothing. Turning to that proposed allocation, Defendant determined from the billing entries that $28,162.75 in fees related solely to the Hodeaux Claim and $5,757.75 related solely to the MBH Claim. (Resp. Exs. A, B.) Several tasks totaling $3,765.25 related to neither Claim. (Resp. Ex. C.) That leaves $79,140.39 "that possibly may relate to both the MBH Claim and the Hodeaux Claim." (Resp. at 7.) Defendant contends Plaintiff is entitled only to the MBH Claim defense costs of $5,757.75 or, at most, that amount plus one-half of the remaining $79,140.39.

In reply, Plaintiff eventually concedes the $3,765.25 of unrelated fees and $28,162.75 in Hodeaux-only fees.[5] (Reply at 8–9.) The parties' dispute therefore boils down to the remaining $79,140.39. The answer is clear: Plaintiff is entitled to the $79,140.39.

---

[5] Plaintiff, like Defendant, takes an all-or-nothing approach at first. It argues Defendant failed to dispute the $116,826.14 figure during the summary judgment phase and therefore waived any later objection. (Reply at 7.) The Court rejects this. First, Plaintiff provided no legal support for waiver in this context. Second, and more importantly, the Court was concerned only with addressing liability at summary judgment. The issues of damages and allocation of defense costs were premature.

- 6 -

Defendant itself admits those fees "possibly may relate" to both the MBH and the Hodeaux Claims. (Resp. at 7.) This raises two possibilities: (1) there is uncertainty as to whether certain fees went to the defense of the noncovered versus the covered Claim, or (2) there was overlap in the services provided for both the covered and uncovered Claims. If it's uncertainty, the burden of proof dictates Plaintiff gets those fees because Defendant could not demonstrate by a preponderance of the evidence how the fees should be allocated. If it's overlap, Plaintiff is also entitled to the fees. The parties contracted and Plaintiff paid premiums for the duty to defend. Reducing the amount expended in defending the covered Claim because it overlapped with steps taken in defending the noncovered Claim deprives Plaintiff of the full benefit of the defense for which it paid. *Hebela*, 851 A.2d at 85. In other words, Defendant bears the costs of overlapping services. *See id*; *see also Certain Underwriters*, 2016 WL 6876497, at *5 ("[A]pportionment of defense costs among covered and non-covered defendants is not necessary if the defense of the latter did not increase the costs of the former.") This also comports with how some courts in this circuit allocate defense costs under the "reasonably related" test in the context of a D & O policy. *E.g.*, *Raychem Corp. v. Fed. Ins. Co.*, 853 F. Supp. 1170, 1182 (N.D. Cal. 1994) ("Having purchased this form of insurance, the [insured] is entitled to the full benefit of its bargain. So long as an item of service or expense is reasonably related to the defense of a covered claim, it may be apportioned wholly to the covered claim.")

In sum, Plaintiff set forth undisputed evidence that it spent $116,826.14 defending the underlying action. Defendant met its burden in apportioning from that sum $3,765.25 for unrelated fees and $28,162.75 for fees related only to the Hodeaux Claim. Defendant is not responsible for those defense costs. However, because Defendant failed to demonstrate that the remaining fees did not go toward defending the covered MBH Claim, Plaintiff is entitled to those fees. That amount is $84,898.14.

**IT IS THEREFORE ORDERED** that Plaintiff is entitled to $84,898.14 in defense costs stemming from Defendant's breach of contract.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly and close this matter.

Dated this 11th day of August, 2020.

Honorable John J. Tuchi
United States District Judge

- 8 -